IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NELLY HOME CARE, INC | : | CIVIL ACTION |
| v. | : | |
| UNITED STATES OF AMERICA | : | NO. 15-439 |

| | | |
|---|---|---|
| NELLY LLC | : | CIVIL ACTION |
| v. | : | |
| UNITED STATES OF AMERICA | : | NO. 15-444 |

MEMORANDUM

Dalzell, J.                                                                                                         May 10, 2016

## I.     Introduction

We consider here plaintiffs Nelly Home Care, Inc. and Nelly LLC's (hereafter collectively referred to as "Nelly") consolidated motion for summary judgment against the Government. Nelly brings this action seeking to recover a total of $4,000 in employment taxes it paid to the Internal Revenue Service ("IRS") for tax years 2008 through 2012, plus costs and attorney's fees. The Government determined that during these years Nelly had incorrectly classified its non-medical homecare service providers as independent contractors instead of employees. Nelly paid the taxes and now seeks to have those payments refunded because it avers that it had a "reasonable basis" for treating its workers as independent contractors in accordance with the safe harbor provisions of Section 530 of the Revenue Act of 1978. The Government asserts that Nelly cannot reasonably rely on prior audits, industry practices, or any other basis for treating companions as independent contractors.

We have jurisdiction over these claims pursuant to 28 U.S.C. § 1331. For the reasons set forth below, we will grant Nelly's consolidated motion for summary judgment.

## II.     Factual and Procedural History

Nelly LLC and its successor corporation, Nelly Home Care, Inc., were both formed and managed by Helen Carney in 2004 and 2009, respectively.  Carney Dep. at 12: 11-24, 17: 20-25.  Nelly provides non-medical homecare services to senior citizens.  Id. at 13: 17-18.  Throughout its history, Nelly has contracted with up to 70 workers[1] and currently contracts with about 35 workers to provide homecare services.  Id. at 28: 8-24.  Nelly represents itself as a matchmaker between elderly customers and workers who provide homecare services.  A prospective customer will contact Nelly requesting a homecare services worker, and Nelly will review the workers in its registry to determine if any are available for the times and tasks requested by the prospective customer.  Carney Dep. at 100-112.  The vast majority of Nelly's customers reside at the Beaumont in Bryn Mawr, PA.  See, e.g., id. at 95-96, 162-63.  Nelly asserts that it does not supervise or direct its workers in the performance of their duties.  Carney states that the workers receive no training from Nelly, though she did admit that she hosts orientation or in-service sessions for workers going into certain facilities, such as the Beaumont.  Carney Dep. at 94: 21-25, 95: 1-25.  Carney further said that she does not give directions to workers on how to care for clients and noted that any specific instructions provided to workers are done so by the host facility.  Id.  But, as the IRS notes, Nelly obtained worker's compensation insurance for companions, something companies do for employees but not independent contractors.  Declaration of Beatriz Saiz at ¶ 6.

Carney herself first worked as a provider of homecare services for residents at the Beaumont in Bryn Mawr, PA.  Id. at 37: 7-10.  While working at the Beaumont, she met other providers of these services and learned that they worked as independent contractors who

---

[1] Nelly refers to its workers as "Companions," though Carney states that workers can also be referred to as "home health aides" or "caregivers."

contracted with home health agencies throughout the region. Id. at 129: 17-25, 130: 1-25. Carney then reached out to homecare service providers such as Bayada, Griswold, and Golden Care, and learned that two of those firms treated their workers as independent contractors. Id. at 186: 8-15, 278: 2-12. She then decided to start her own company and "engage the services of other companions…to provide care as independent contractors." Mot. at 4. She also had her attorney draft an independent contractor agreement based on a contract reviewed from Bayada. Carney Dep. at 132: 5-22.

After its inception, Nelly continued to confirm its decision to treat its companions as independent contractors. It conducted a survey of home care companies as to whether they classified their companions as independent contractors or employees. Mot. at Ex. 16. The survey showed that seven of the twenty[2] companies classified their companions as independent contractors. Id. But, as the Government notes, many of these companies were not located in the Philadelphia metropolitan area and thus were improper comparators. Gov't Resp. Opp. Mot. at 9. In 2009, the Commonwealth of Pennsylvania issued new regulations on homecare companies, and shortly after incorporating Nelly Home Care, Inc., Carney attended a mandatory conference the Pennsylvania Department of Health conducted. Carney Dep. at 210. At that conference, Carney was again told that Home Care Registries, the classification under which Carney registered Nelly Home Care, Inc., are defined as businesses that "suppl[y], arrange[] and refer[] independent contractors to provide home care services." 28. Pa. Code. § 611.5. See also Mot. at Ex. 9. Carney soon thereafter began operations of Nelly Home Care, Inc. and discontinued Nelly LLC. See Mot. at Ex. 10.

---

[2] The survey can also be interpreted as finding that nine of the twenty-two companies surveyed classified companions as independent contractors if one includes Golden Care and Griswold, which were written into the bottom of the page.

The IRS audited the personal income tax returns of Carney and her husband Paul in 2007 for the 2004 and 2005 tax years, and as a part of that audit requested information on Nelly LLC, including documents relating to gross receipts, expenses, and copies of the independent contractor agreements. Mot. at Ex. 5. This audit led to significant adjustments to the Carneys' tax liability, as the IRS concluded that Helen Carney had underreported her income by $100,000, commingled business and personal bank accounts, and charged 80% of her personal expenses through Nelly LLC. Declaration of Revenue Agent Seong Y. Lee ("Lee Decl.") at ¶ 5. The IRS states that it requested documentation related to Nelly LLC to analyze the Carneys' claim of the contract labor deduction and to resolve discrepancies in the Carneys' claimed expenses. Id. at ¶ 6. In 2011, the Carneys again had their personal income tax returns audited, this time for the 2008 tax year. Declaration of Revenue Agent Benjamin Hosford at ¶ 3. The IRS, however, resolved this audit with a "no change" determination. Id. at ¶ 8.

The IRS conducted an employment tax audit of Nelly LLC and Nelly Home Care, Inc. in 2011. Declaration of Revenue Agent Tara Wigginton, at ¶ 2. For this audit, the IRS reviewed Nelly LLC's tax liability for the 2008 and 2009 tax years and Nelly Home Care's liability for 2010, 2011, and 2012. Id. The IRS determined that the companions were employees for federal employment tax purposes and that both Nelly LLC and Nelly Home Care owed back taxes for those years. Id. at ¶ 3. Following this determination, Nelly made the tax payments for these five years and began this litigation to recoup those payments.

### III. Legal Standard

Parties may move for summary judgment on any claim or defense in the case, and the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P.

56(a).  A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted).  If the moving party meets this initial burden, Fed. R. Civ. P. 56 then obliges the non-moving party to show, via submissions beyond the pleadings, that there are genuine factual issues for trial.  Id. at 324.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable jury could find for the party opposing the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (explaining further that a scintilla of evidence is insufficient). Material facts are those that would affect the outcome of the case under the governing law.  Id. at 248.  We may not make credibility determinations or weigh the evidence, and we must draw all reasonable inferences in favor of the non-moving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Amour v. County of Beaver, PA, 271 F.3d 417, 420 (3d Cir. 2001).  Even if the facts are undisputed, a disagreement over what inferences may be drawn from the facts precludes a grant of summary judgment. Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir.1996).  Our function is to determine whether there is a genuine issue for trial, and we may not prevent a case from reaching a jury simply because we favor one of several reasonable views of the evidence.  Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999).

**IV.    Discussion**

The Internal Revenue Code states that an employer is liable for back employment taxes when it incorrectly treats an employee "as not being an employee."  26 U.S.C. § 3509(a).  IRS

auditors are relying on this section to increasingly scrutinize any perceived incorrect classifications of workers as independent contractors.  See, e.g., Jeff Saviano and Debera Salam, Why are Tax Audits Increasingly Focused on Incorrect Classification of Workers as Independent Contractors?, JOURNAL OF MULTISTATE TAXATION AND INCENTIVES, July 25, 2015, at *33 (available online on Westlaw Next at 2015 WL 3941484).

But Section 530 of the Revenue Act of 1978 provides a safe harbor for taxpayers who owe back employment taxes after they erroneously fail to classify certain workers as employees. Nu-Look Design, Inc. v. C.I.R., 356 F.3d 290, 294 (3d Cir. 2004).  Section 530, which is uncodified, "allows the taxpayer to avoid liability for certain federal employment taxes if the taxpayer had a reasonable basis for not treating such individual as an employee." Id. (internal citations and quotations omitted).[3]  A taxpayer can show that it had a "reasonable basis" to not classify workers as employees if the taxpayer based this classification on reasonable reliance upon:

> (A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;
> (B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holdings positions substantially similar to the position held by this individual; or
> (C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

Revenue Act of 1978, Pub.L. No. 95-600, 92 Stat. 2763 (as amended by Act of Dec. 29, 1979, Pub.L. No. 96-167, 93 Stat. 1275); Act of Dec. 17, 1980, Pub.L. No. 96-541, 94 Stat. 3204; Tax

---

[3] Before showing that it had a reasonable basis for classifying workers as independent contractors, a taxpayer must first establish that it filed all required returns consistent with treating the worker as an independent contractor and that it did not treat any other worker holding substantially the same position as an employee. See, e.g., Henry v. United States, 793 F.2d 289, 291 (Fed. Cir. 1986).  Nelly asserts, and the Government agrees, that Nelly has met these first two requirements, and we therefore decline to discuss them further here.

Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324; Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat.2085; Small Business Job Protection Act of 1996, Pub.L. No. 104-188, 110 Stat. 1755 (hereinafter cited as "Section 530").  Moreover, a taxpayer who can demonstrate a "reasonable basis" for not classifying workers as employees outside the three statutory safe harbor categories can be entitled to relief.  See Critical Care Register Nursing, Inc. v. United States, 776 F. Supp. 1025, 1027 (E.D. Pa. 1991) (holding that a taxpayer who fails to meet any of the statutory safe harbors can still obtain relief if it demonstrates by some other manner a reasonable basis for not treating a worker as an employee).

A taxpayer need only satisfy one of the four safe harbors provided under Section 530 to prove that it is entitled to relief.  Hospital Resource Personnel v. United States, 68 F.3d 421, 425 (11th Cir. 1995).   The taxpayer, of course, bears the burden to show that it is entitled to the Section 530's protection.  See 26 U.S.C. § 340; see also Halfhill v. United States I.R.S., 927 F. Supp. 171, 175 (W.D. Pa. 1996).  Should a court find that the taxpayer has demonstrated a "reasonable basis" for not classifying workers as employees, it need not determine whether such classification was indeed appropriate, and can simply find that the taxpayer is entitled to the relief it seeks.  See, e.g., Select Rehab, Inc. v. United States, 205 F. Supp. 2d 376, 384 (M.D. Pa. 2002) ("As Plaintiff has established reasonable reliance based on § 530, it is unnecessary to determine whether the physicians were independent contractors or employees…"); Déjà vu Entertainment Enterprises of Minnesota, Inc. v. United States, 1 F. Supp. 2d 964, 968 (D. Minn. 1998) ("The issue is not the actual status of the performers, but whether [the taxpayer] had a reasonable basis for treating the performers as it did.").

Nelly first avers that it reasonably relied on past IRS audits when classifying its employees as independent contractors, but this averment lacks merit.  To prove that it qualifies

for the prior audit safe harbor provision, a taxpayer must show that (1) the IRS previously audited the taxpayer, (2) the IRS determined in that prior audit that the taxpayer's workers were independent contractors, (3) the workers subject to the prior audit were substantially similar to the workers at issues, and (4) the taxpayer treated the two groups of workers in a substantially similar fashion. Smoky Mountain Secrets, Inc. v. United States, 910 F. Supp. 1316, 1325 (E.D. Tenn. 1995) (citing Lambert's Nursery and Landscaping, Inc. v. United States, 894 F.2d 154, 156 (5th Cir. 1990)). The audits on which Nelly relies were personal tax audits for Helen Carney and her husband Paul, not of Nelly, the taxpayer at issue here. While the audit involved an examination of Nelly's finances and business practices and contracts between Nelly and its companions, the IRS was focused on the Carney's questionable income tax returns. In fact, these audits only occurred because Carney had underreported her income, commingled business and personal bank accounts, and charged 80% of her personal expenses through Nelly. When the IRS requested the 1099 Forms, it did not do so to challenge the independent contractor classification, but instead to examine Carney's questionable deductions and expenses on her personal tax return. We therefore find that neither of the prior audits related to Carney's personal tax return constitute a past IRS audit for Nelly contemplated under Section 530.

Nelly next avers that it relied on a "long-standing recognized practice of a significant segment of the industry," Section 530(c), and thus is entitled to protection. We disagree. To establish that it is entitled to protection under the industry practice provision of Section 530, a taxpayer must show that (1) a long-standing recognized industry practice exists in a significant segment of the industry, and (2) the taxpayer reasonably relied on this practice in the tax treatment of its workers. Texture Source, Inc. v. United States, 851 F. Supp. 2d 1260, 1265 (D. Nev. 2012). The "significant segment" language of Section 530 is vague, but courts have found

8

that "a significant segment does not mean a majority," General Inv. Corp. v. United States, 823 F.2d 337, 340 (9th Cir. 1987), and that in some circumstances "one or two businesses may constitute a significant segment of an industry." Hospital Resource Personnel, Inc. v. United States, 68 F.3d 421, 427 (11th Cir. 1995).

Nelly argues that she relied on a long-standing industry practice when she spoke with companions from three separate agencies performing the same work before starting Nelly in 2004. Two of these three agencies treated their companions as independent contractors, while one classified them as employees. Nelly's argument fails here for two reasons. First, Nelly has not produced sufficient evidence to show that two firms constitute a significant segment of an industry. In fact, in Hospital Resource Personnel, which Nelly cites for the principle that one or two businesses can constitute a significant segment of an industry, the court found that offering evidence that a taxpayer's only competitor in its place of business treated its workers as independent contractors was insufficient to prove a significant segment of the industry engaged in the practice. Second, Nelly has produced no evidence that this practice is longstanding, only that at the time of its inception two similar agencies treated companions as independent contractors.

Nelly also asserts that it relied on its own survey of the industry taken in 2008 which demonstrated a long-standing practice of classifying companions as independent contractors in a significant segment of the home health industry.[4] We find that the survey that Nelly took in 2008 does not confirm that a significant segment of the industry classifies its companions as independent contractors because, as the Government states, many of those companies surveyed

---

[4] Nelly argues in its motion for summary judgment that her attendance at a 2010 seminar put on by the Pennsylvania Department of Health also established a long standing industry practice, but this seminar is better considered under the non-statutory "reasonable basis" analysis.

are located outside the Philadelphia metropolitan area. We therefore find that Nelly is not entitled to relief under the "long-standing industry practice" provision of Section 530.

But while Nelly has not shown it is entitled to the statutory safe harbor provisions of Section 530, the record does demonstrate that Nelly is entitled to relief under the "other reasonable basis" safe harbor. The facts, when viewed most favorably to the Government, confirm that Nelly had a reasonable basis to classify its companions as independent contractors. Before forming Nelly LLC, Carney was a home health aide herself, and she spoke to other aides and learned that many of them were independent contractors. Carney also reached out to three other companion providers and learned that at least two of them treated their companions as independent contractors. Carney did her own research and reviewed an independent contractor agreement used by another companion company. She had her attorney draft an independent contractor agreement. Finally, the IRS said nothing about the independent contractor classification of Nelly LLC when it audited her personal tax returns in 2007. While the purpose of the audit was to analyze Carney's personal income tax delinquencies, the IRS requested and reviewed numerous documents regarding Nelly LLC, including copies of contracts with independent contractors. Given that it undertook an in-depth analysis of Nelly LLC's business practices, it was reasonable for Carney to interpret the IRS's silence on the independent contractor classification as acquiescence.

The same reasoning applies to Nelly Home Care, Inc., the company Carney started in 2010. Additionally, Carney attended a mandatory conference the Pennsylvania Department of Health conducted in 2010 where it informed attendees that the regulatory definition of a "home care registry" was a business that "supplies, arranges or refers independent contractors to provide

home care services..." 28 Pa. Code § 611.5. Carney began operations at Nelly Home Care in 2010 after registering the business as a home care registry.[5]

The Government avers that there can be no ex post facto justification for employment decisions, and that this principle applies to both Nelly LLC and Nelly Home Care. See Gov't Resp. Opp. Mot. at 24, citing Nu-Look Design, Inc. v. C.I.R., 85 T.C.M. (CCH) 927 (U.S. Tax Ct. 2003). This argument is misplaced. Carney's decisions to treat companions as independent contractors followed extensive research in both 2004 and 2010. The IRS audits and Department of Health presentations simply confirmed Carney's previous decision – they were not the standalone basis for said decision. Moreover, Carney did not make a single decision when choosing to classify Nelly's companions as independent contractors. She made this decision for each tax year in which either Nelly LLC or Nelly Home Car were in operation. We therefore hold that both Nelly LLC and Nelly Home Care are entitled to the protections of the "reasonable basis" safe harbor protections provided in Section 530 for the tax years 2008, 2009, 2010, 2011, and 2012.[6]

Since we have determined that Nelly is entitled to relief based on the "reasonable basis" safe harbor provision under Section 530, we need not answer the question of whether Nelly was correct when it classified its workers as independent contractors instead of employees. To be sure, our decision today in no way endorses Nelly's classification of its workers as independent contractors. But we can find that Nelly is entitled to relief on the taxes it paid for the years 2008 to 2012 without resolving that issue.

---

[5] It is important to note, however, that Carney incorporated the business on December 24, 2009, not in 2010.

[6] As a reminder, Nelly LLC is the taxpayer for the 2008 and 2009 tax years while Nelly Home Care is the taxpayer for the 2010, 2011, and 2012 tax years.

**IV.** **Conclusion**

We find that Nelly has met its burden and proved that it had a reasonable basis for classifying its workers as independent contractors. Thus, it is entitled to protection under the safe harbor provisions of Section 530 of the Revenue Act of 1978. We will enter judgment in favor of plaintiff Nelly and against the Government in the amount of $4,000.[7] An appropriate Order follows.

---

[7] Nelly also requests that we award reasonable costs and attorney's fees. We will rule on this issue only after a formal motion or affidavit from Nelly requesting a specific amount and after considering any potential response in opposition from the Government.